IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA THOMAS, ) | |
| ) | |
| Plaintiff, ) | No. 10 C 6045 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| MICHAEL J. ASTRUE, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Thomas seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423(d)(2), and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. § 1382c(a)(3)(A). This court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The parties have filed cross motions for summary judgment. Based on this court's review of the Administrative Record, as well as the pleadings and memoranda on file, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The decision of the Commissioner is affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for DIB in May 2005 and for SSI in September 2005, alleging that she became disabled in January 2002 as a result of a back impairment. Her application was denied initially and upon reconsideration. After requesting a hearing, plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"). Vocational expert James Breen also testified. The ALJ issued a final decision on September 29, 2008, finding that

plaintiff was not disabled because she could perform a significant number of jobs in the national economy. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.

## FACTUAL BACKGROUND

At the time of the hearing on June 5, 2008, plaintiff was 52 years old, single, and living with her daughter and older sister. She has an Associates Degree in child development and a certified nurse's assistant license through the State of Ohio that was not currently valid. Her past work included bell ringer, cashier, nurse/health aide, room attendant and warehouser. She was 5 feet 11 inches tall and weighed 190 pounds. She had last worked in January 2002 as a nurse's aide. Plaintiff testified that she had back and shoulder problems, describing a constant heaviness in her shoulder blades, and a constant "fire" in her low back. She had stated that she had arthritis in her left hand and broke a toe on her right foot. She further stated that she had trouble walking, sitting, lifting and carrying. She estimated that she could lift two to three pounds, and in an eight hour day walk one hour, stand one hour and sit for 15 minutes.

Plaintiff told the ALJ that on a typical day she got up between 9:00 and 10:00 a.m., showered, and ate. She was able to dress, groom and bath herself. She would then either go back to bed or rest on a love seat, watching television. She would have a snack in the afternoon, dinner around 6:00 p.m. and then will lay down and watch more television. She went to bed around 8:30 to 9:00 p.m. She was able to wash dishes but could not grocery shop. She had no hobbies or activities but did physical therapy exercises with the help of her family.

Plaintiff testified that she suffers from bipolar disorder and anxiety. She experiences panic attacks described as the blood soaring out of control and her thoughts become scattered.

2

She has "slow down periods" and forgets things. She would watch television, but when the commercials came on she would forget what she was watching. She also had trouble reading. At the time of the hearing she was not on any medication for psychological conditions and received no mental health treatment.

**Medical Evidence**

The medical evidence demonstrates that plaintiff was involved in a motor vehicle accident on January 19, 2002, the alleged disability onset date. She sought emergency room treatment. The records indicate that her neurological, motor, sensory and cerebellar functions were normal and the x-rays of her cervical spine, mandible and right shoulder were all described as normal or unremarkable. She was discharged with prescriptions for pain medication.

Her medical records from prior to the alleged onset date indicate that she had already been experiencing low back pain symptoms since 2001. An MRI conducted on May 10, 2001, showed mild degenerative disc disease throughout the lower lumbar spine, with no bony abnormality. A December 15, 2001, MRI demonstrated a small central and left sided disc herniation at L4-S1 and a moderate degree on canal stenosis at L4-5.

Between 2001 and 2007 plaintiff frequently went to treating physicians complaining of back pain, foot and shoulder pain. Her medications were adjusted as appropriate to include Ultram, Vioxx, Naprosyn and, by 2008, Soma and Vicodin. The treatment notes also included references to complaints of depression or "nerves being bad."

On September 7, 2007, plaintiff underwent a decompressor lumbar laminectomy surgery at L4-5 with medial facetectomy and left L5-S1 diskectomy. January 20, 2002, x-rays of her right shoulder and cervical spine showed no dramatic abnormalities of the shoulder and a normal

cervical spine. A February 22, 2002, MRI study of the right shoulder showed mild AC degenerative changes. An August 28, 2002, MRI of the lumbar spine indicated stable appearance of the lumbar spine with left paracentral HNP at L5-S1 causing mild depression in the thecal sac, and mild to moderate stenosis at L4.

In addition to the records of plaintiff's treating physicians, the medical evidence also included the reports of two examinations conducted at the direction of the Bureau of Disability Determination Services. On February 4, 2006, plaintiff was given a comprehensive physical examination by Dr. Ezike, who diagnosed her as having chronic low back pain, depression, history of poor memory and burn scares. Dr. Ezike's physical examination of plaintiff revealed that she could walk more than 50 feet without support, and was able to get on and off the exam table with no difficulty. Her gait was antalgic without the use of assisted devices, and she ambulated with a cane for support and confidence. She was able to perform the toe/heel walk with moderate difficulty, had normal grip strength in both hands and normal ability to grasp and manipulate objects. She was able to fully extend the hands, make fists and oppose her fingers. Her range of motion of the shoulders, elbows, and wrists were all normal. The range of motion of her hips, knees and ankles were normal. Her range of motion of the cervical spine was normal. Her lumbar flexion was about 50 degrees with mild pain, and there was moderate diffuse lumbar and paralumbar tenderness. Straight leg raising was negative.

Plaintiff was also given "an extensive clinical interview and psychological testing" by Scott Donaldson, Ph.D. who diagnosed plaintiff as having Bipolar Disorder, Not Otherwise Specified and an Anxiety Disorder, and assessed a GAF of 45-55. He indicated that plaintiff's ability to understand, remember and carry out one or two step job instructions may be weak, but

4

not impaired. He further testified that her level of motivation may be lacking moderately and her ability to attend to relevant stimuli is likely to be impeded moderately. Accordingly to Donaldson, plaintiff's interpersonal relationship skills appear to be limited moderately as was her ability to withstand the stress and pressure of day-to-day work activity, leading to his conclusion that plaintiff will need assistance managing her funds.

**Vocational Evidence**

James Breen, the Vocational Expert ("VE"), classified plaintiff's previous work history as: (1) nurse's aide, semiskilled medium; housekeeping, unskilled, light; warehouse worker, unskilled medium; and cashier, unskilled light. The ALJ then asked the following hypothetical question:

> Assume hypothetical individual in the age range of 46-52, educated and an Associate's Degree in Child Development Level, the past relevant work history the same as the claimant, limited to light work, only occasionally climb, stoop, kneel, crouch, and crawl, frequently balanced, but limited to simple, repetitive tasks involving only occasional contact with the public, co-workers and supervisors, and without strict time or production requirements. How would these restrictions affect past relevant work?

The VE answered that plaintiff's past work would be ruled out and that plaintiff had no transferable skills. The ALJ then asked about unskilled-entry level jobs and the VE indicated that plaintiff could perform as a mail clerk for a business at the unskilled, light level. The VE then stated that there were about 6,000 of those jobs, and 13,000 room services clerk jobs. The VE also indicated that there were about 12,000 jobs at the sedentary level.

The ALJ then asked if there would be any jobs for plaintiff if the ALJ found plaintiff to be totally credible with all impairment supported by the medical records. The VE responded that there would be no jobs because of, (1) plaintiff's inability to lift even ten pounds, (2) the panic

attacks would take plaintiff off task, and (3) her inability to stand for two hours out of an eight hour day. He concluded that plaintiff would not be able to perform an eight hour work day, five days a week. In response to plaintiff's attorney's questions about whether the requirement of an hand held assistive device (cane) would alter the VE's assessment, the VE stated that it would not matter for the sedentary jobs but the light duty jobs would likely be ruled out because plaintiff would need some accommodations.

## **THE ALJ'S DECISION**

The ALJ found that plaintiff met the insured status requirements of the Act through December 13, 2006, that she had not engaged in substantial gainful activity since January 19, 2002, and that she had the following severe impairments: degenerative disc disease of the lumbar spine; arthritis; depression; bipolar disorder; and anxiety. After reviewing the medical evidence concerning these impairments, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or equaled a list of impairments. He specifically considered listings 1.02 and 1.04 for musculoskeletal system impairments and listings 12.04 and 12.06 concerning mental impairments.

Next, the ALJ determined that plaintiff had the residual functional capacity to perform a limited range of unskilled light work, specifically finding that "she can frequently balance . . . She cannot perform work that requires more than occasional climbing; kneeling; crawling; stooping; or crouching. She is limited to simple, routine and repetitive tasks involving only occasional contact with the public, co-workers, and supervisors and without strict time or production requirements." In reaching this decision the ALJ reviewed plaintiff's testimony concerning her physical limitations as well as her psychological impairments, but found that

plaintiff's statements concerning the intensity, persistence and limiting affects of those symptoms were not credible because they were inconsistent with residual functional capacity assessment. He then set forth the factors he considered in reaching this decision, specifically noting that plaintiff's medical records do not "reflect the type of treatment one would expect for a totally disabled individual or for one with symptoms as alleged by [plaintiff].... but for [plaintiff's] surgery, which apparently resulted in improvement in [plaintiff's] condition, this treatment is best described as conservative and limited in nature and scope, yet consistent with the evidence of record which shows minimal objective findings." The ALJ then noted plaintiff's description of her daily activities as fairly limited, but found that two factors weighed against considering plaintiff's statements to be strong evidence in favor of finding her disabled. First, there was no objective verification of plaintiff's testimony. Second, even if he credited plaintiff's testimony in full, he found it "difficult to attribute that degree of limitation to [plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence."

The ALJ then determined that plaintiff could not perform her past relevant work, but relying on the VE's testimony, could perform jobs existing in significant numbers in the national economy. As a result, he found plaintiff not to have been under a disability as defined in the Act

## DISCUSSION

This court must affirm the Commissioner's decision if it is supported by substantial evidence, which is defined as "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir.2010) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This court cannot re-weigh the evidence, or substitute its

7

judgment for that of the ALJ. Terry v. Astrue, 580 F.3d 471, 475 (7th Cir. 2009). If conflicting evidence would allow reasonable minds to differ as to whether a claimant is disabled, it is the ALJ's responsibility to resolve those conflicts, and this court must affirm if the decision is adequately supported. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008). Conclusions of law are not given such deference, however, and if the Commissioner commits an error of the law this court must reverse. Schmidt v. Astrue, 496 F.3d 833, 841 (7th Cir. 2007).

Despite this extremely deferential standard, this court does not act as a "rubber stamp" for the Commissioner's decision. Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002). The ALJ is required to "minimally articulate" the reasons for the decision, providing enough clarity and detail to permit meaningful review. Berger v. Astrue, 516 F.3d 539, 544 (7th Cir. 2008); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). There must be a "logical bridge" between the evidence and the ALJ's conclusion. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

The Social Security Regulations (20 C.F.R. § 404.1520) provide a five step sequential inquiry to determine whether a plaintiff is disabled:

(1) Is the plaintiff currently unemployed;

(2) Does the plaintiff have a severe impairment;

(3) Does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

(4) Is the plaintiff unable to perform her past relevant work; and

(5) Is the plaintiff unable to perform any other work in the national economy?

An affirmative answer leads either to the next step or, on steps (3) and (5), to a finding that the claimant is disabled. 20 C.F.R. § 416.920. A negative answer at any point, other than

8

step (3), stops the inquiry and leads to a determination that the claimant is not disabled.  20 C.F.R. § 404.1520.  The claimant bears the burden of proof through step (4).  If the claimant carries that burden, the burden then shifts to the Commissioner at step (5).  Briscoe, 425 F.3d at 352.

Plaintiff raises a number of attacks on the ALJ's decision.  First, she argues that the record demonstrates that she cannot walk without the use of a cane, and that according to the VE the requirement of a cane would eliminate light level jobs, restricting plaintiff to sedentary work.  Therefore, according to plaintiff, after her 50th birthday on December 22, 2005, if limited to sedentary work, she must be considered disabled because she has no transferable skills.  20 C.F.R. § 404, Subpart P., Appendix 2.  The ALJ noted in his decision, however, that he did not credit plaintiff's testimony about her limitations because it conflicted with the medical evidence.  In particular, Dr. Ezike's report indicated that plaintiff was able to walk at least 50 feet without support.  Indeed, there is very little medical evidence in the record to support plaintiff's statements that she requires (rather than prefers) the use of a cane.  The ALJ was entitled to make a credibility determination and conclude that plaintiff's statements about her need for a cane were exaggerated.  That conclusion is supported by substantial evidence and does not require reversal.

Next, plaintiff argues that the ALJ failed to address plaintiff's limitation to one and two step jobs and asked the VE a "flawed hypothetical."  The court disagrees.  The opinion details both Dr. Donaldson's findings and then determined that the ALJ concurred with the State Agency Consultant's determination that plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining

9

concentration, persistence or pace, and no episodes of decompensation. The State Consultant's report, issued after reviewing Dr. Donaldson's report, made specific detailed findings as to plaintiff's mental capabilities with respect to her ability to work, which the ALJ set out in great detail. The Consultant concluded that plaintiff had the mental residual functional capacity to "understand, remember, and execute short and simple instructions consistently and concentrate and persist adequately on tasks within an organized setting but needs a low-stress job where there are not tight time lines or high production quotas." The ALJ was entitled to rely on the Consultant's opinions, particularly where as here those opinions are consistent with the other medical evidence. Dr. Donaldson never indicated that plaintiff was limited to performing one to two step tasks, he simply noted that her ability to perform such tasks was "not impaired." In short, the ALJ based his hypothetical question on the report of the Consultant. He was fully entitled to do so. See 20 C.F.R. § 404.1527(f)(2)(I). Because it tracked the language of the Consultant's opinion, the hypothetical was not fundamentally flawed and the ALJ did not commit reversible error.

Plaintiff's final objections to the ALJ's determination are essentially attacks on his assessment of plaintiff's credibility. As noted above, the ALJ's opinion gives very specific reasons for rejecting plaintiff's testimony, finding it to be inconsistent with her medical history. In particular, as noted by the ALJ, there are no medical records to corroborate plaintiff's statements to Dr. Ezike or to Dr. Donaldson that she had received extensive psychiatric treatment.

In short, the ALJ's conclusion is amply supported by the medical records of the treating physicians, as well as the conclusions of the State Agency Consultants hired to review those

records. The Commissioner's decision is supported by substantial evidence and must be affirmed. Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.


**ENTER:　　August 16, 2012**

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**Robert W. Gettleman**
　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**